NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORETTA J. ROSA, <br><br> Plaintiff, <br> v. <br><br> SEIKO CORPORATION OF AMERICA, <br><br> Defendant. | CIVIL ACTION NO. 05-4406 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court on Defendant Seiko Corporation of America's ("Defendant" or "Seiko") motion for summary judgment pursuant to Fed. R. Civ. 56 [docket no. 27]. The Court decides the motion on the submissions made in support of and in opposition to the motion without hearing oral argument. See Fed. R. Civ. P. 78. For the reasons set forth below, Defendant's motion for summary judgment is granted.[1]

**I.    Factual and Procedural History**

    **A.    Plaintiff's Employment with Seiko**

Plaintiff does not dispute a number of Defendant's arguments. Nevertheless, the facts giving rise to her claims are lengthy and should be discussed. Plaintiff Loretta J. Rosa is a former employee of Seiko Corp. of America. See Def.'s Statement of Undisputed Material Facts (hereinafter "Def.'s Stmt.") at ¶ 1. She began working for Seiko on a temporary basis in 1987 as

---

[1] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the pendant state law claims under 28 U.S.C. § 1367.

1

a Material Handler and became a permanent employee in or around 1988-89. Id. at ¶¶ 1-2. In 1990, according to Plaintiff, she quit her job at Seiko because of "favoritism" instead of "deal[ing] with [the problem]". Id. at ¶ 3.[2]

In or around March 1993, Plaintiff returned to Seiko as a temporary employee in the Production Department. Id. at ¶ 6. Sixth months later, September 1993, Ms. Rosa became a material handler on a full-time basis, id. at ¶ 7, and in September 1994, she received a promotion to Coordinator and an accompanying salary increase, id. at ¶ 8. While employed at Seiko from 1994 through 2004, Plaintiff received varying job performance appraisals, mostly which rated her poorly. See id. at ¶¶ 23-34, 76-77. Dave Ehrhardt, one of Plaintiff's supervisors, conducted the majority of Plaintiff's reviews. See id. Those that were not done by Ehrhardt came from Jerry Koslowski, see id., and Michael Doherty, id. at ¶ 77, two of Plaintiff's other supervisors. The essence of Plaintiff's poor performance reviews were that she had a "below average" ability to relate to her co-workers, did not treat her co-workers or her supervisors with respect, and did not report her own absences or failures in punctuality. See id. at ¶¶ 23-34, 76-77.

In October 2002, Plaintiff was transferred to Seiko's Fulfillment Department–remaining in a Coordinator position–to cure the significant issues she had with her co-workers in the Shipping and Receiving Department. Id. at ¶¶ 42-43; see id. at ¶¶ 45-46. Plaintiff recognized that this position was highly coveted. See id. at ¶ 47. Subsequent to her transfer, Plaintiff told

---

[2] The types of favoritism to which Plaintiff points are "managing favors" and "pick[ing] a certain person and . . . . humiliat[ing] the rest of [the employees]". Def.'s Stmt. at ¶ 4. The "managing favors" to which Plaintiff refers includes "certain people . . . [sitting in the bosses'] office and eat[ing] ice cream with them" while others were completing their respective jobs and co-workers being "allowed to sit there and do their nails while [others were] working". Def.'s Stmt. at ¶ 4. In particular, Plaintiff testified that she felt Tony Gonzalez favored Marie, a female employee. Id. at ¶ 5.

2

Michelle Mongo, the Director of Human Resources at Seiko, that she was "much happier" and that "it was much better" for her in the Fulfillment Department. Id. at ¶ 48.

### B. Plaintiff's Allegations of Harassment and Unfair Treatment at Seiko

#### 1. Allegations Against Bill Dole

Bill Dole was one of Plaintiff's co-workers in the Shipping and Receiving Department. Id. at ¶ 52. Plaintiff has alleged that Dole sexually harassed her, both verbally and physically by approaching her in 1994 in the "vault" in which there is no easy route to leave, and again in 2002 in the Seiko parking lot. Id. at ¶¶ 52-54, 64-65. Plaintiff filed a formal written complaint about Dole and also made oral complaints in or around 1994 and 1995. Id. at ¶¶ 55-56. Ehrhardt testified that Seiko moved Dole to a different part of the department in order to keep him separated from Plaintiff. Id. at ¶ 59.

On September 12, 2002, Plaintiff gave a letter to Thomas Rossiter of Seiko, outlining the problems with Dole; Rossiter in turn gave the letter to Mongo in Human Resources. Id. at ¶¶ 63, 68. Four days later, Plaintiff filed a police report about this incident, stating that Dole had been "harassing" and "stalking" her. Id. at ¶ 66. She took no further action against him. Id. Dole received instructions not to go near Plaintiff again and a memorandum to the file was drafted about the parking lot incident. Id. at ¶ 70.

#### 2. Allegations Against Rudina Marzug

When Plaintiff received a poor performance evaluation from Michael Doherty in 2004, she responded by saying that Doherty should not be conducting her reviews as there was a "conflict in th[e] Department". Id. at ¶ 77. Plaintiff filed a letter on April 11, 2004, complaining that Doherty and Rudina Marzug had a "unique manager/employee relationship".

3

Id. at ¶ 78. The letter contained descriptions of Marzug's harassing behavior towards Plaintiff, including "play[ing] chicken" with Plaintiff, pushing a cart into her, and placing an empty box in her path. Id. Plaintiff also maintained that despite reporting these incidents to Doherty, he did nothing to ensure their abatement or discipline Marzug because of their "unique relationship". Id. at ¶ 78. Rosa testified that all employees–"male and female"–feared Marzug. Id. at ¶¶ 83-84.

Chris Ide, another Seiko supervisor, conducted six interviews with respect to the allegations set forth in Plaintiff's April 11th letter. Id. at ¶ 79. Ide gleaned that *Plaintiff* was the cause of the problems in the Fulfillment Department. Id. However, Plaintiff complained to Mongo that Ide had specially chosen the interviewees; to assuage Plaintiff's complaints, Mongo conducted interviews with seventeen (17) employees who confirmed Ide's conclusions. Id. at ¶¶ 79-81. On May 24, 2004, Rosa filed one final complaint against Marzug, alleging that she had thrown a box at Plaintiff's head. Id. at ¶¶ 84-85.

### C. Seiko's Downsizing and Plaintiff's Termination

In 2000, Seiko began a series of layoffs in their Mount Olive facility. Id. at ¶ 9. Id. Due to a downsizing in the square footage of the facility, Seiko decided to eliminate one of the Coordinator positions in the Fulfillment Department as it was no longer necessary. Id. at ¶¶ 12-13. Seiko chose to eliminate Plaintiff's position because she had the least seniority of the three Coordinators and the worst performance evaluations. Id. at ¶ 14. Seiko terminated Rosa's employment on June 29, 2004, id. at ¶ 10, and offered her a severance package, which she declined, id. at ¶ 16.

### D. Procedural History

On September 2, 2004, the U.S. Equal Employment Opportunity Commission ("EEOC")

sent a letter to Rosa, stating that she had submitted insufficient information to establish the basis for filing a charge. Certification of Jennifer Van Syckle ("Van Syckle Cert.") at ¶ 37, Ex. QQ. Additionally, the EEOC recognized that the "evidence presented for sexual harassment [was] untimely," but that Plaintiff had the "right to insist on filing a charge of discrimination". Id. On October 6, 2004, Plaintiff received another letter from the EEOC, notifying her that the EEOC "did not have jurisdiction over [her] allegations," but that they were enclosing a charge upon Plaintiff's insistence. Id. at ¶ 38, Ex. RR. On October 28, 2004, Plaintiff filed her Charge of Discrimination with the New Jersey Division of Civil Rights ("DCR"), which contained allegations of sexual harassment by a male co-worker in 2002 only. Id. at ¶ 39, Ex. SS. She also presented the Charge to the EEOC. Id. On June 16, 2005, the EEOC issued Plaintiff a Right to Sue letter, instructing that her lawsuit "must be filed within 90 days of [her] receipt of this notice". Id. at ¶ 40, Ex. TT (emphasis in original).

Plaintiff filed her Complaint in this action on September 8, 2005, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD") based on Defendant's discriminatory conduct. Plaintiff alleges that she was sexually harassed by Bill Dole, as against 42 U.S.C.§ 2000e (Count I) and the NJLAD (Count II), was subject to retaliatory termination (Count III) and a gender-based hostile work environment, in violation of 42 U.S.C. § 2000e (Count IV) and the LAD (Count V), and unequal pay, contrary to the Equal Pay Act codified at 29 U.S.C. § 206 (Count VI). Defendant asserts that Seiko is entitled to summary judgment on each of Plaintiff's claims.

## II. Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### III. Discussion

#### A. Counts I and II: Hostile Work Environment and Retaliatory Transfer

Seiko argues that Plaintiff's allegations of sexual harassment in Counts I and II of the Complaint and of hostile work environment and retaliatory transfer, in violation of Title VII and the LAD respectively, are time-barred under the governing case law. Def.'s Br. in Support of Summ. J. Mot. ("Def.'s Br.") at pp. 11-13. Furthermore, according to Defendant, Plaintiff cannot

bring a claim for sexual harassment for the 1994 incident with Dole as she did not exhaust her administrative remedies with regard to said allegations. Id. at pp. 13-15. Although Plaintiff's opposition is considerably convoluted and fails to address a number of Defendant's arguments, it appears that Plaintiff asserts, in oppositions to Defendant's lack of timeliness argument, that these claims should remain under the "continuing violation doctrine". See Pl.'s Opp'n Br. at pp. 6-7.[3]

Under Title VII, a plaintiff who initiates proceedings with a State or local agency must also file said charge with the EEOC within 300 days of when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); Taylor v. Brandywine Sch. Dist., 202 Fed. Appx. 570, 574 (3d Cir. 2006) ("Title VII requires a claimant to file a charge with the EEOC within 300 days of the allegedly unlawful employment practice if the claimant has filed a parallel proceeding with a state agency"). A plaintiff may maintain claims stemming from incidents prior to the 300-day period under the "continuing violation" theory if the plaintiff can show that (1) at least one discriminatory act occurred within the requisite 300-day time limit and (2) the harassment or discrimination was part of an ongoing pattern of discrimination, not one in a series of isolated discriminatory acts. Taylor, 202 Fed. Appx. at 574; see Tummala v. Merck & Co., Inc., No. 93-3812, 1995 WL 669220, at *5 (D.N.J. Nov. 9, 1995) ("[I]f a Court identifies an unlawful employment practice of which plaintiff complains, the Court will grant relief for the earlier

---

[3] Plaintiff has not numbered the pages in her opposition brief to assist the Court in determining Plaintiff's compliance with L. Civ. R. 7.2(b). While it is not the Court's duty to count pages, for the sake of clarity and ease of reference, the Court cites to page numbers by the order of the pages, with page one succeeding the page containing the "Table of Authorities" as specified by L. Civ. R. 7.2(b).

related acts that would otherwise be time barred so long as the act which evidences the continuing violation falls within the limitation period" (quotations omitted)). However, a plaintiff cannot merely offer conclusory allegations to support a "continuing violation" claim: the plaintiff must provide the court with specific factual support. Tummala, 1995 WL 669220, at *5.

Rosa first filed a claim for sexual harassment and retaliatory transfer with the DCR and the EEOC on October 28, 2004. Thus, any claims accruing more than 300 days prior to this date, *i.e.*, prior to January 2, 2004, are time barred as a matter of law. See Lacy v. Nat'l R.R. Passenger Corp., No. 07-3374, 2007 WL 4150428, at *1 (3d Cir. Nov. 26, 2007) (per curiam) ("We agree with the District Court that the claims which are based on events that occurred prior to [the 300-day cutoff] are time barred"). Plaintiff's *latest* allegations of sexual harassment by Dole occurred on or around September 11, 2002. Compl. ¶ 15; see Deposition of Loretta J. Rosa ("Rosa Dep.") at 153:8-153:20; 198:3-198:11; Van Syckle Cert. at ¶¶ 3, 14-15, Exhs. A, T, U. Thus, neither the 1994 nor the 2002 allegations of sexual harassment are within the requisite limitation period. Plaintiff's retaliatory transfer claim–the transfer from the Shipping and Receiving Department to the Fulfillment Department in October 2002–likewise is not within the requisite time period and fails.

Plaintiff's "continuing violation" argument does not salvage her hostile work environment claim. "[A] hostile environment results from acts of sexual harassment which are so pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment." West v. Phila. Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995) (quotation and citations omitted). Here, Plaintiff's hostile work environment claim arises out of two discrete incidents–the alleged 1994 confrontation where Dole asked Rosa out to

dinner in the vault and the purported 2002 encounter in the Seiko parking lot, both of which occurred well before January 2, 2004. See Pl.'s Counterstatement of Facts ("Pl.'s Stmt.") at ¶¶ 2-3, 8. Although the Court declines to examine the merits of these allegations, if found to be harassment, these events potentially could amount to sporadic sexual harassment. See Taylor, 202 Fed. Appx. at 574-75. On this basis alone, Plaintiff fails to demonstrate a continuing violation. Moreover, Plaintiff's own hostile work environment allegations are contradictory. Plaintiff states that Dole sexually harassed her "from about 1996 until her termination," Compl. at ¶ 26, that she was subjected to "a course and pattern of sexual harassment . . . from at least 2002 on," Pl.'s Opp'n Br. at p. 7, that Dole began his verbal sexual harassment of Plaintiff when she joined Seiko in 1993, Pl.'s Aff. at ¶ 1, and that between 1994 and 2002 "the department manager . . . assigned Dole work in proximity to Plaintiff; and Dole used that opportunity to make unwelcome advance and comments to her," Pl.'s Stmt. at ¶ 12. Plaintiff offers nothing in the way of *facts* to support these claims. Thus, these statements are not only discrepant, but also unsubstantiated, conclusory, and insufficient to overcome Defendant's motion for summary judgment.

With respect to Count II of Plaintiff's complaint, under New Jersey law, a plaintiff must bring a claim under the NJLAD within the two-year statute of limitations period. Montells v. Haynes, 133 N.J. 282, 286, 292 (1993). Applying this rule to Rosa's NJLAD claim, the sexual harassment alleged must have occurred two years prior to the filing of her Complaint on September 8, 2005–meaning, September 8, 2003. As noted previously, Dole's alleged sexual harassment of Plaintiff occurred on September 11, 2002 at the latest–nearly a year prior to time limitation, making this claim untimely. Thus, the Court grants summary judgment to Defendant

on Counts I and II of Plaintiff's Complaint.[4]

### B.     Counts III: Retaliatory Discharge

Defendant's argue that Plaintiff's retaliatory termination claim brought under Title VII and the NJLAD cannot stand.[5] Def.'s Br. at pp. 21-24. Examination of a plaintiff's Title VII claim is governed by the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). The New Jersey Supreme Court has adopted the McDonnell Douglas-Burdine rubric for claims brought under the NJLAD, Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002), and federal courts deciding motions for summary judgment of such claims apply it accordingly, see Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300, 305 (3d Cir. 2004); Rogers v. Alternative Res. Corp., 440 F. Supp. 2d 366, 369 (D.N.J. 2006) ("When analyzing claims of employment discrimination under the NJLAD . . . , the Court must employ the McDonnell Douglas-Burdine burden shifting framework at the summary judgment stage"). The McDonnell Douglas-Burdine test consists of three steps. First, plaintiff must establish a *prima facie* case of discrimination. If plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason

---

[4] Because the Court finds that these claims are untimely, the Court will not examine either Defendant's argument regarding Plaintiff's failure to exhaust her administrative remedies with respect to her allegations of the 1994 sexual harassment or whether Plaintiff's claims of harassment could withstand Defendant's motion on their own merit.

[5] Plaintiff cites no statute in Count III of the Complaint; Plaintiff only states that her termination was "contrary to the public policy of the State of New Jersey and wrongful". Compl. at ¶ 32. Because both Title VII and NJLAD provide a remedy for retaliatory discharge and Plaintiff has invoked the statute elsewhere in her Complaint and because Plaintiff adduces no evidence to support such a claim under either the federal or state statute, the Court will review construe Count III as alleging a violation of both Title VII and the NJLAD.

for terminating the employee. McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 252-53. Upon the employer's proffer of such a rationale, the burden returns to the plaintiff to proffer evidence from which a reasonable court could conclude that the employer's explanation was pretextual. McDonnell Douglas, 411 U.S. at 804; Burdine, 450 U.S. at 253.

With respect Count III, to establish a *prima facie* case for retaliatory termination, Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that the employer took adverse action against her; and (3) a causal connection between the adverse action and plaintiff's protected conduct. See Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006); Barber v. CSX Distribution Svs., 68 F.3d 694, 701 (3d Cir. 1995). The same analysis applies to a claim of retaliatory discharge under the NJLAD. Rogers, 440 F. Supp. 2d at 376. Plaintiff has not offered any evidence to satisfy her burden. Plaintiff alleges she was fired in retaliation for the contents of her April 11, 2004 letter and her May 24, 2004 written complaint regarding Marzug's behavior. Pl.'s Opp'n Br. at pp. 5-6. Neither of these documents is considered "protected conduct" under the statute. See Barber, 68 F.3d at 701-2 (finding that a letter to a human resources department that "complains about unfair treatment in general and expresses dissatisfaction . . ., but . . . does not specifically complain about [gender] discrimination . . . does not constitute the requisite 'protected conduct' for a *prima facie* case of retaliation"); Slagle, 435 F.3d at 267 (granting summary judgment to employer because plaintiff's EEOC complaint was facially invalid in that it was a "general complaint of unfair treatment" and did not allege one of the prohibited grounds protected by Title VII). In Plaintiff's April 11th letter, she asserts that she felt other employees were hostile to her due to her "job title": in addition, Plaintiff states that people in her department "did not like [her] because [she] held the position of coordinator". Van

11

Syckle Cert., Ex. NN. However, the majority of the April three-page letter describes various incidents between Plaintiff and Marzug. Id. The May 24, 2004 complaint to Mongo only discusses the episode in which Marzug threw a box at Plaintiff's head. Id., Ex. PP. Nowhere in the one-paragraph complaint does Rosa allege that this incident had anything to do with her gender. See id. As Plaintiff has failed to satisfy her burden, the Court need not review the legitimate, non-discriminatory reasons for Plaintiff's termination proffered by Defendant and grants summary judgment to Defendant on Count III.

### C. Count IV and V: Hostile Work Environment

Plaintiff asserts a hostile work environment claim based on Doherty and Marzug's conduct under Title VII and the NJLAD in Counts IV and V, respectively. Neither party adequately addresses these claims in their briefing to the Court. While the Court does not condone such oversight, it will review Plaintiff's claims and not require further briefing for the sake of efficiency.

An employee must establish five elements to establish a *prima facie* case of a gender-based hostile work environment under Title VII: (1) the employee would not have suffered discrimination but for her sex; (2) the discrimination suffered was pervasive and regular; (3) the discrimination detrimentally affected employee; (4) a reasonable person of that gender in that position would have been detrimentally affected; and (5) the employer is liable under the theory of *respondeat superior* liability. Drinkwater v. Union Carbide Corp., 904 F.2d 853, 860 (3d Cir. 1990); Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614, 617 (D.N.J. 1998). The framework for analyzing a hostile work environment claim under the NJLAD is nearly identical

12

to the analysis for the same claim under Title VII. See Feraro-Bengle v. Randstad North America, L.P., No. 03-1650, 2006 WL 2524170, at *4 (D.N.J. Aug, 30, 2006) (Linares, J.) (setting forth the four-step NJLAD hostile work environment analysis); Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005) ("[T]he hostile work environment analyses for Title VII and NJLAD claims are 'strikingly similar'. . ."). Thus, the Court will examine Counts IV and V simultaneously.

Here, Plaintiff alleges that Marzug's behavior and Doherty's favoritism of Marzug created a hostile work environment. While it is clear from the evidence in the record that Plaintiff and Marzug had a severe personality conflict, Plaintiff has not met her burden of demonstrating that Marzug's behavior--no matter how uncivil or unbecoming--constitutes discrimination or that such behavior was based on Plaintiff's sex. Neither Title VII nor the NJLAD were intended to extend a "general civility code" for conduct in the work place. Reyes, 997 F. Supp. at 617 (stating that Title VII "should not expand into a general civility code"); Heitzman v. Monmouth County, 321 N.J. Super 133, 147 (N.J. Super. Ct. App. Div. 1999) (noting that NJLAD does not operate as a "civility code"). Furthermore, neither statute was intended for use to cure "personality conflicts". Reyes, 977 F. Supp. at 618. By Plaintiff's own admission, Marzug's abusive behavior was not gender-specific. Rosa Dep. at 186:20-186:24. Thus, there are no grounds on which the Court can conclude that Marzug's actions caused Rosa to suffer discrimination based on her sex.

Plaintiff's allegations against Doherty also cannot survive. Title VII does not protect against all types of "sexual favoritism". See EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, EEOC Notice No. 915-048, at 2 (Jan. 12, 1990). The

EEOC's Policy Guidance maintains that sexual favoritism can be a basis for a hostile work environment claim by both men and women "regardless of whether any objectionable conduct is directed at them" "[i]f favoritism based upon the granting of sexual favors is widespread in a workplace." Id. There are no grounds for such a claim "[w]hen an employer discriminates in favor of a paramour, [as] such an action is not sex-based discrimination, [because] the favoritism, while unfair, disadvantages both sexes alike for reasons other than gender . . . ." Badrinauth v. MetLife Corp., No. 04-2552, 2006 WL 288098, at * 4 (D.N.J. Feb. 6, 2006) (quoting Wilson v. Delta State Univ., 143 Fed. Appx. 611, 614 (5th Cir. 2005)); see Drinkwater, 904 F.2d at 862 ("A sexual relationship between a supervisor and a co-employee could adversely affect the workplace without creating a hostile sexual environment. A supervisor could show favoritism that . . . would not necessarily instill the workplace with oppressive sexual accentuation. The boss could treat everyone but his . . . paramour badly . . ."). The New Jersey courts agree that this type of favoritism is not violative of the NJLAD. Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 78 (N.J. Super. Ct. App. Div. 2004) (affirming dismissal of plaintiff's claim of third-party sexual harassment under NJLAD based on EEOC Notice No. 915-048).

Here, Plaintiff's claim is unsupported by the evidence in the record. Plaintiff alleges that she suffered "daily stress," see Van Syckle Cert., Ex. NN, but has offered no evidence to show that Doherty's favoritism of Marzug only affected women in the Fulfillment Department. To wit, one of Rosa's male co-workers in the Fulfillment Department testified that he also believed Doherty showed favoritism to Marzug, but also to Irene Rowan and Rusa Dortinoski. Deposition of Bengt Lindsfors at 17:13-17:25. Neither Plaintiff's Title VII claim nor her NJLAD claim rise to the level of actionable "sexual favoritism". Because Rosa has not submitted evidence from

14

which a reasonable fact finder could conclude that a gender-based animus motivated Doherty's alleged favoritism or the incidents between Plaintiff and Marquz, Rosa's hostile work environment claims under both Title VII and the NJLAD are insufficient to withstand Seiko's motion for summary judgment. See Lacy, 2007 WL 4150428, at *2. Defendant's motion on Counts IV and V is granted.

### D. Count VI: Unequal Pay

Defendant asserts that it is entitled to summary judgment on Plaintiff's claim under the Equal Pay Act, codified in 29 U.S.C. § 206 (the "EPA"). The gravamen of Count VI is that Seiko assigned different titles to men and women performing the "warehouseperson" job in order to pay the "warehouse*men*" more than the women performing the same job under the title of "material handler". Compl. at ¶ 10. The EPA prohibits exactly this kind of behavior. Under the EPA, it is unlawful for an employer to pay employees who perform the same job different wages based on the employee's gender. 29 U.S.C. § 206(d)(1). Claims arising under the EPA are not evaluated in light of the McDonnell Douglas-Burdine framework, but rather with a two-step burden-shifting test. Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). First, a plaintiff must show that employees performing the same work were paid differently based on their gender. Id.; Lemke v. Int'l Total Svs., Inc., 56 F. Supp. 2d 472, 490 (D.N.J. 1999) ("To establish a *prima facie* case under the EPA, plaintiff must show that an employer pays different [wages] to employees of opposite sexes for equal work on jobs . . . which require[] equal skill, effort, and responsibility . . ."). If the plaintiff meets his or her burden, the burden of persuasion shifts to the employer to demonstrate that the pay differential is based on one of the affirmative defenses outlined in the statute–(1) seniority, (2) merit, (3) the quality or quantity of production or (4) any

15

other factor other than sex. Stanziale, 200 F.3d at 107; Lemke, 56 F. Supp. 2d at 490; see 29 U.S.C. § 206(d)(1)(i)-(iv).

Plaintiff has failed to meet her burden. In her Complaint, she concedes that Seiko hired Kornelia Jozwiak as a "warehouseperson" as the same wages as the men performing this task. Compl. at ¶ 12. Seiko has also offered evidence showing that as of 1996, men and women both possessed the job title "warehouseperson". Van Syckle Aff. at ¶¶ 41-42, Exhs. UU, VV. Although the documents offered by Defendant indicate that not all employees bearing this title were paid the same wage, the disparity seems to exist based on the employees' seniority, not on their gender. See id. at Exhs. UU, VV. For example, in April of 1996, both Sean Peek and Alice Wilson bore the title "warehouseperson," but Wilson, whose hire date was July 30, 1990, was paid an annual salary of $20,174 while Peek, hired on March 29, 1993, made $18,589. Id. at Ex. UU. Even assuming Plaintiff could meet her burden to show that men and women performing the same job were paid differently, Seiko could assert one of the statute's affirmative defenses–that the differential in compensation was based on the seniority of its employees, not on gender. Consequently, the Court grants summary judgment to Seiko on Plaintiff's last remaining claim.

## IV.    Conclusion

For the aforementioned reasons, the Court grants Defendant's motion for summary judgment as to all of Plaintiff's claims. An appropriate order accompanies this opinion.

Date:   January 23, 2008

Jose L. Linares
United States District Judge